IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, et al.                        :
                                             :
              Plaintiff,                     :
                                             :
     v.                                      :        Civil Action No. 1:07-cv-00052
                                             :
MOUNTAIRE FARMS, INC.,                       :
                                             :
              Defendants.                    :

## MOTION FOR TEMPORARY RESTRAINING ORDER, AND/OR PRELIMINARY INJUNCTION AGAINST MOUNTAIRE AND ITS CORPORATE OFFICERS VINK AND WEST[1] IN RESPONSE TO RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

Plaintiffs, pursuant to Federal Rule of Civil Procedure 65, hereby move this Court for

expedited injunctive relief in the form of a Temporary Restraining Order and Preliminary

Injunction, in response to overt retaliation against Plaintiffs following their assertion of their

rights under the Fair Labor Standards Act and support this motion as follows:

### STATEMENT OF FACTS

1.     This action for overtime on behalf of seven Crew Leaders employed by Mountaire

Farms in Millsboro, Delaware was filed by Complaint on January 26, 2007.

2.     Within a couple of weeks from the filing of the Complaint, Live Haul Manager,

Bruce West, the direct supervisor of each of the Plaintiffs herein, called Plaintiffs, Kenneth

Sampson ("Mr. Sampson") and Virgil Baine into his office. One of the purposes of this meeting

was to discuss the lawsuit that had just been filed. (See Affidavit of Kenneth Sampson dated

July 15, 2008 attached hereto as Exhibit "A"). When Plaintiffs Sampson and Baine left Mr.

West's office based upon Mr. West's comments, they resolved that they had no choice but to

---

[1] Pursuant to §15(a)(3) of the Fair Labor Stanrds Act, Plaintiffs have simultaneously filed a Motion to Amend the Complaint to add Bruce West and Cher Vink as Defendants due to their retaliatory actions against Plaintiffs.

withdraw as parties Plaintiff from the instant litigation.

3.      Mr. Sampson and Mr. Baine contacted the other Plaintiffs herein and a total of five of the seven Plaintiff Crew Leaders signed a Petition that was sent to their counsel in February 2007 indicating their desire to withdraw from in the litigation.  (A copy of this Petition is attached hereto as Exhibit "B"; See also, Sampson Affidavit and Affidavit of Aubrey Weston, dated July 15, 2008 attached hereto as Exhibit "C").

4.      This case was assigned to the vacant judgeship and there was no activity on same until the matter was reassigned to The Honorable Sue L. Robinson in February 2008.  At that point, a Case Management Order was sent to counsel.  [Docket No. 18]

5.      A Scheduling Order was issued in this matter on April 4, 2008 setting trial for December 15, 2008.  [Docket No. 23]

6.      By that point, in April 2008, each of the five Plaintiffs who had previously indicated a desire to leave the litigation expressed his desire to go forward with the litigation. (Sampson Affidavit, Exhibit "A").

7.      Each of the seven Plaintiffs was deposed by Defendants during the month of June 2008, concluding with the depositions of Kenneth Sampson and Vincent Wise on Friday, June 27, 2008.  Attending each of the depositions of Plaintiffs were Live Haul Manager, Bruce West and Cher Vink, the Human Resources Director for both the Millsboro and Selbyville plants.

8.      Within days of the conclusion of Mr. Sampson's deposition, Mr. Sampson, the Plaintiff who was initially called into the office of Bruce West following the filing of the Complaint and decided to discontinue his participation in this litigation, was contacted again by Bruce West. (Id.).  This time, Mr. West advised Mr. Sampson that he was being relieved of his Crew Leader responsibilities.  (Id.).

9.    Plaintiff Sampson was transferred into the poultry processing plant where he continues to be employed by Mountaire. (Id.).

10.    Plaintiff Sampson strongly desires to continue to work as a Crew Leader in which capacity he has worked for Mountaire for several years and has never been made aware of any issues or problems with either his performance or the performance of his crew. (Id.).

11.    Plaintiff Sampson was replaced immediately by an independent Crew Leader who is believed to have come from a Virginia-based firm that helps place immigrants in the poultry business.

12.    Early in the week of July 7, 2008, Plaintiff Aubrey Weston ("Mr. Weston") was advised that another Crew Leader was to be replaced by a second independent Crew Leader. (Weston Affidavit, Exhibit "C"). Late on Friday afternoon, July 11, 2008, Plaintiff Weston learned that he was the Crew Leader designated to lose his position to an independent Crew Leader. (Id.). Mr. Weston had one of the most, if not the most, stable and productive crews of chicken catchers in Millsboro. (Id.).

13.    Following the notice that a second Crew Leader would lose his position, undersigned counsel sent via electronic mail a letter to Mountaire's counsel, Arthur M. Brewer, Esquire ("Mr. Brewer") on July 11, 2008 protesting what appeared to be direct retaliatory action and requested information to rebut the presumption of retaliation. (A copy of that correspondence is attached hereto as Exhibit "D").

14.    Immediately after Plaintiff Weston's report to undersigned counsel about the loss of his position, he wrote another electronic mail letter to Mr. Brewer on July 11, 2008. In that letter a "detailed business non-retaliatory explanation" for the transfer of these Crew Leaders to other positions was requested. Plaintiff also made demands that the Crew Leaders be

3

immediately reinstated to their positions. (A copy of this letter is attached hereto as Exhibit "E").

15.    At the end of the day on Monday, July 14, 2008, counsel for Mountaire sent an electronic letter to undersigned counsel denying retaliation and claiming that their business reasons for replacing the Crew Leaders with independent contractors because they are more economical and that they are better able to maintain fully staffed crews. (A copy of that correspondence is attached hereto as Exhibit "F").

16.    Plaintiffs have been advised that a third Crew Leader will be replaced on or about July 28, 2008 with an independent contractor.

17.    Plaintiff William B. Hudson ("Hudson") remains as a Crew Leader at Mountaire, Millsboro. For the last week he has been working along side of the "independent crews" who have hired to replace the crews that were led by Messrs. Sampson and Weston. Mr. Hudson has observed that several of the crew members that once were on his crew but were discharged because of their immigration status, are back now employed in the independent crews as Catchers.

18.    Mr. Hudson agreed to sign an Affidavit with regard to his observations that illegal immigrants are now working on the new independent crews. However, Live Haul Manager Bruce West would not allow Mr. Hudson to see his undersigned counsel for a couple of minutes on July 15, 2008, and, as a result, Mr. Hudson was unable to sign the Affidavit that he had previously expressed his intention to sign. It is anticipated that Mr. Hudson will sign the Affidavit and this Affidavit will be submitted to the Court upon receipt of same. A copy of the unexecuted Affidavit for William B. Hudson is attached hereto as Exhibit "G".

19.    Bruce West initially advised undersigned counsel that he would go to Mr. Hudson

and have him come over for a couple of minutes. After a period of approximately 15 minutes, Bruce West approached undersigned counsel and said the following: "Sorry Mr. Martin, he is on my time." A copy of the Affidavit of Jeffrey K. Martin, Esquire is attached hereto as Exhibit "H".

**STATEMENT OF FACTS**

**LAW AND ARGUMENT**

**A.**    **Standard**

20.    When considering an application for a temporary restraining order, "the Court must consider whether (1) the movant has shown that there is a reasonable likelihood that it will succeed on the merits; (2) the movant has demonstrated that it will suffer irreparable harm absent the relief sought; (3) the other party will not be substantially injured by the relief; and (4) where the public interest lies." Tootsie Roll Industries, Inc. v. Sathers, Inc., 666 F. Supp. 655, 658 (D. Del. 1987). "In order to grant an application for a temporary restraining order, the Court must conclude that each of the four factors weighs in favor of granting temporary injunctive relief." Playboy Entertainment Group, Inc. v. U.S., 918 F. Supp. 813, 820 (D. Del. 1996). "The function of the temporary restraining order is to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." Id. at 659; see also, 11 C. Wright & A. Miller § 2951. "Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." FRCP 65(a)(2).

21.    For the reasons stated below, this Motion establishes that each four factors weighs in favor of granting temporary injunctive relief.

**A.**    **Plaintiffs Have Established That There Is A Reasonable Likelihood That They Will Prevail On The Merits**

5

22.    It is very likely that Plaintiffs will prevail on this issue (retaliation) at trial. There can be little doubt that Mountaire knows of Messrs. Weston and Sampson's participation in this lawsuit, especially in light of the fact that Mountaire has taken the depositions of both of these gentlemen and Mr. West and Ms. Vink were present at both depositions. Therefore, Mountaire's knowledge of their involvement cannot be at issue.

23.    The timing of Mountaire's "transfers" to Messrs. Weston and Sampson is especially suggestive of retaliation. See, Houlihan v. Sussex Technical School Dist., 461 F. Supp.2d 252 (D. Del. 2006) (where a plaintiff engages in a protected and shortly thereafter received discipline, the time is suggestive of a causal connection between the two to demonstrate retaliatory motive); and Cf. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000) (noting that suspect timing, ongoing antagonism between employee and employer, and other circumstantial evidence may suffice to establish the causal connection prong of a prima facie retaliation claim). Specifically, the meeting with Mr. Sampson and Mr. West wherein Mr. West gave a strong indication that Mr. Sampson must remove himself from the lawsuit or face the impending consequences was held shortly after the Complaint in this matter was filed on January 26, 2007. Mr. Sampson and others ("the Withdrawing Plaintiffs") heeded this warning and signed a statement indicating that they wanted to withdraw from the lawsuit (See Exhibit "B"). In or about late February or early March 2008, the Withdrawing Plaintiffs indicated to Plaintiff's counsel that they desired to rejoin the lawsuit. Thereafter, each of the Plaintiffs was deposed by Mountaire in June 2008.

24.    Less than one week following Mr. Sampson's deposition at which he provided testimony against Mountaire, he was "transferred" from his position of Crew Leader. Mr. Sampson was advised of the discontinuation of his Crew Leader duties for Mountaire by Live

6

Haul Manager, Bruce West. Cher Vink, the Human Resources Director, was most certainly involved in this decision having been in attendance at each of the Plaintiffs' depositions during the month of June 2008, and because of her position as the Human Resources Director for the Millsboro facility.

25.    On July 11, Mr. Weston, the lead Plaintiff in this case, was relieved from his duties as Crew Leader. As the lead Plaintiff in this action, obviously Mr. Weston is a highly visible Plaintiff. His "transfer" as well as that of Mr. Sampson sends a clear message to the rest of the Plaintiffs that should they continue to pursue this action, they, too, will be transferred or otherwise lose their positions as Crew Leaders.

26.    In addition, despite Plaintiffs' counsel's requests to Mountaire for a detailed non-retaliatory business justification for the "transfers," Mountaire's response on July 14, 2008, fails to meaningfully provide any evidence that retaliation was not the motivation for the elimination of the two Crew Leader positions. Counsel's response also failed to acknowledge that a third Crew Leader is scheduled to be removed by the end of July. Mountaire's response fails to explain why it was that Kenneth Sampson and Aubrey Weston were chosen to lose their positions. Sampson was, of course, the Crew Leader approached by Bruce West shortly after the Complaint was filed, and following his discussion with West, decided along with four other Crew Leaders to discontinue their participation in this litigation. Aubrey Weston is the lead Plaintiff in this matter and in this capacity as the lead Plaintiff, he was also one of the five who chose to discontinue his participation in the litigation in February 2007. Further, as the Mountaire Crew Leader with the most experience, he also had the most stable of the Millsboro crews and his removal is not consistent with Mountaire's expressed desire to maintain fully staffed crews. Mountaire's reference to the independent contractors as being "more economical"

7

may be construed as tantamount to an acknowledgement that Mountaire recognizes its liability to the Crew Leaders to pay them overtime.

27.    Noteworthy in this regard is the fact that these transfers were not the result of any reduction in force. The fact is, Messrs. Weston and Sampson were replaced by "independent contractors" who will continue to serve as Crew Leaders for Mountaire in place of Messrs Weston and Sampson. Mr. Weston was told by Mr. West that the transfer was necessary due to a shortage of Catchers. However, Mr. Weston's crew had a full compliment of Catchers up until the day that he was informed that he was being "transferred" and Mr. Weston had the most productive of all the crews. It simply does not make good business sense to disband the most productive crew and leave the less productive crews intact. Furthermore, because Messrs. Weston and Sampson are being replaced, and there is therefore no reduction in the number of crews employed by Mountaire, logic dictates that transferring these two Crew Leaders was simply not necessary even if there were a shortage of Catchers as alleged.

28.    In sum, viewing the circumstances in their entirety, Mountaire's knowledge of these individuals' participation in the lawsuit; the timing of the "transfers;" the fact that the "transfers" were not necessitated by a reduction in force; the lack of business justification by Mountaire; and the fact that Messrs. Weston and Sampson's positions were immediately filled with other individuals, Messrs. Weston and Sampson are likely to prevail on their claim of retaliation.

## B.    Plaintiff Has Demonstrated Immediate And Irreparable Harm

29.    Defendants' actions in removing Messrs. Weston and Sampson are retaliatory against them for participating in this lawsuit. These two Plaintiffs will suffer imminent and irreparable injury if they are not reinstated to their positions as Crew Leaders because their new

assignments are involuntary and they must now perform work inside a poultry processing plant in positions for which they have no experience. These new positions are strictly forty hours per week thereby cutting them off from future overtime. In other words, Messrs. Weston and Sampson will no longer be working greater than forty hours per week, performing work they have chosen and have years of experience performing, and therefore will lose not only past overtime payments in terms of the overtime they are losing now, but prospective overtime should the jury find that the Crew Leaders are non-exempt employees. In this regard, their employment as Crew Leaders could continue for an indefinite period of time thereby making it impossible for them to receive accurate overtime compensation for time that they would have worked but for the retaliatory transfer.

30.    Secondly, is the effect that these transfers will have on the remainder of the Plaintiffs. As is set forth above, following the meeting with Mr. West, Mr. Sampson knew that he must withdraw from the lawsuit or face the consequences from Mountaire for his refusal to do so. Mr. Sampson along with Messrs Weston, Baine, Powell and Hopkins heeded this warning and did, in fact, ask to withdraw from the lawsuit. Following assurances by counsel that any action taken by Mountaire would be viewed as retaliatory in nature, these Withdrawing Plaintiffs all rejoined the lawsuit.

31.    Now, it appears as if Mountaire is following through with their threats to retaliate against Plaintiffs. These Plaintiffs, having already shown Mountaire their propensity to forego their rights out of fear of losing their jobs, are now faced with the likely prospect that if they do not withdraw again, they will, in fact, lose their jobs as Crew Leaders. Without intervention by the Court demanding that Messrs. Weston and Sampson be returned to their Crew Leader positions and enjoin Mountaire from future transfers of Plaintiffs, the remaining Plaintiffs are

9

likely to drop out of the lawsuit and abandon their rights under federal law in order to save their positions.

32.    The injuries to Messrs. Weston and Sampson are imminent as they are currently losing wages to which they would be entitled upon prevailing in this lawsuit. The injury to the remaining Plaintiffs is imminent insofar as they are under duress to remove themselves from the lawsuit.

C.    **Mountaire Will Not Be Damaged Substantially By The Relief Sought**,

33.    Mountaire will not be damaged substantially should the Court grant injunctive relief. It has hired "independent contractors" to fill the positions of Messrs. Weston and Sampson. Therefore, the decision to transfer these two employees was not driven by a need to reduce its force of Crew Leaders. To the extent that the cost of utilizing these "independent contractors" is less than the cost of paying Messrs. Weston and Sampson, the amount of savings by replacing these two Crew Leaders cannot be deemed "substantial" to the extent that the savings is likely minimal. To assert that its decision to replace only two of these Crew Leaders (and not coincidently two of the Crew Leaders participating in the law suit) at this time was a necessary financial decision at this time is disingenuous.

34.    When balancing the hardships in the present situation, the damage to Messrs. Weston and Sampson, by virtue of Mountaire's "transferring" them to positions that work only forty hours per week, substantially outweighs any damage that Mountaire will incur should Messrs. Weston and Sampson be ordered to resume their duties as Crew Leaders.

D.    **The Relief Sought By Plaintiffs Will Not Adversely Affect Public Policy Or The Public Interest**

35.    The public interest and public policy will not be adversely impacted by the relief

10

sought. To the contrary, the public interest and public policy preventing retaliatory actions against employees asserting a right to overtime compensation under the FLSA will be served to the extent that it will prevent Mountaire from taking further actions in violation of the FLSA. In addition, public policy will be served by the work at the poultry farms being done by individuals with valid immigration status as opposed to allowing this work to be done by those who have been previously determined to have illegal immigration status. Moreover, such an Order will serve the public interest to the extent that it will serve as a deterrent to other employers from taking similar action. Finally, given the Withdrawing Plaintiffs' decision to withdraw from this lawsuit following the initial meeting with Mr. West, it is clear that Mountaire's transferring of Messrs. Weston and Sampson is a direct and wrongful attempt by Mountaire to end this lawsuit through coercion and intimidation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that a temporary restraining order be issued and that:

a)  Plaintiffs Weston and Sampson be reinstated to their positions as Crew Leaders;

b)  Defendants be enjoined from transferring any other Plaintiffs from their positions as Crew Leaders; and

c)  Defendants be enjoined from taking any further retaliatory action against Plaintiffs.

Respectfully submitted,

*MARTIN & WILSON, P.A.*

Jeffrey K. Martin, Esquire (#2403)
Timothy J. Wilson, Esquire (#4323)
1508 Pennsylvania Avenue
Wilmington, DE  19806
(302) 777-4681
jmartin@martinandwilson.com
twilson@martinandwilson.com
Attorneys for Plaintiffs

DATED:  July 16, 2008

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, et al.                    )
                                         )
        Plaintiffs,                      )
             v.                          )        C.A. NO. 1:07-cv-00052
                                         )
MOUNTAIRE FARMS, INC., MOUNTAIRE         )        JURY TRIAL DEMANDED
FARMS OF DELAWARE, INC, and              )
MOUNTAIRE FARMS OF DELAWARE,             )
all Delaware Corporations                )
                                         )
        Defendants.                      )

## AFFIDAVIT OF KENNETH W. SAMPSON

STATE OF DELAWARE    :
                     :        SS.
SUSSEX COUNTY        :

I, KENNETH W. SAMPSON, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.      I am a Plaintiff in the above-captioned matter.

2.      Shortly after the above captioned Complaint was filed at the end of January last year, I met with Live Haul Manager Bruce West in his office. During this meeting we discussed the lawsuit. Also, during that meeting I advised him that I would not continue with the lawsuit.

3.      Shortly thereafter, I contacted the other Plaintiffs regarding my meeting with Mr. West and together we signed a Petition indicating that we did not want to further pursue this litigation.

4.      My deposition was taken in this matter on Friday, June 26, 2008.

5.      One week later, on July 5, 2008, I was advised by Live Haul Manager, Bruce West, that I would no longer be working as a Crew Leader for Mountaire, but rather would be working inside the poultry processing plant.

6.     This is an involuntary transfer as I would prefer to continue in my capacity as Crew Leader in which I had been working for several years.

7.     I believe that my transfer from my position as Crew Leader is direct retaliation for my pursuit of this litigation and is further designed to intimidate the remaining Crew Leaders so that they agree once more to discontinue this litigation.


KENNETH W. SAMPSON

SWORN AND SUBSCRIBED before me this __15th__ day of July, 2008.


NOTARY PUBLIC

JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW

# EXHIBIT "B"

February 15, 2007

To Whom It May Concern:

We, the undersigned no longer would like to pursue the lawsuit against Mountaire Farms of Delaware.

Sincerely,

Clifford Hopkins

Ernest Powell

Virgil Baine

# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, et al.                          )
                                               )
        Plaintiffs,                            )
                v.                             )        C.A. NO. 1:07-cv-00052
                                               )
MOUNTAIRE FARMS, INC., MOUNTAIRE               )        JURY TRIAL DEMANDED
FARMS OF DELAWARE, INC, and                    )
MOUNTAIRE FARMS OF DELAWARE,                   )
all Delaware Corporations                      )
                                               )
        Defendants.                            )

## AFFIDAVIT OF AUBREY WESTON

STATE OF DELAWARE      :
                       :      SS.
SUSSEX COUNTY          :

I, AUBREY WESTON, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.    I am the lead Plaintiff in the above-captioned matter.

2.    On or about February 15, 2007, I signed a Petition indicating my desire to withdraw from this litigation for fear of retaliation.

3.    I have the longest tenure of the Crew Leaders at Mountaire and have had the most stable and productive group of catchers with me during my tenure as a Crew Leader.

4.    Approximately two weeks ago, we crated twenty-one (21) loads of chicken (approximately eighty-four thousand birds), production that has been unparalleled in the Millsboro Mountaire Plant.

5.    I gave my deposition testimony in this matter on June 17, 2008.

6.    During the week of July 7, 2008, I heard rumors that another Crew Leader would be displaced. I did not think it would be me because of my tenure and my crew's productivity.

7.    On July 11, 2008, I was advised by Live Haul Manager, Bruce West, that I was being transferred from a Crew Leader position to a position in the poultry processing plant.

8.    Based upon these facts and the fact that Kenneth Sampson was removed as a Crew Leader a week before, I believe that this is direct retaliation against the Plaintiffs in this matter who have filed a lawsuit against Mountaire claiming that we are due overtime compensation in accordance with the Fair Labor Standards Act.    I further believe that Mountaire's actions are an attempt to end this lawsuit through intimidation.

_____
AUBREY WESTON

SWORN AND SUBSCRIBED before me this ___15th___ day of July, 2008.

_____
NOTARY PUBLIC

JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW

# EXHIBIT "D"



Jeffrey K. Martin, Esquire*

Timothy J. Wilson, Esquire*

*Licensed in DE, PA and NJ

1508 Pennsylvania Avenue
Wilmington, DE 19806
Telephone: (302) 777-4681
Facsimile: (302) 777-5803
www.martinandwilson.com

July 11, 2008

*VIA E-MAIL ONLY*
*brewer@shawe.com*

Arthur M. Brewer, Esquire
Shawe & Rosenthal LLP
20 South Charles Street
11th Floor
Baltimore, MD 21201

RE:     **Weston v. Mountaire Farms**
        **C.A. No.: 07-00052**

Dear Mr. Brewer:

I write to protest what appears to be direct retaliatory action taken by Mountaire against my clients for participating in this lawsuit. Less than a week following his deposition in the above-captioned matter wherein the Crew Leaders are seeking overtime compensation, Kenneth Sampson was involuntarily transferred from his position as Crew Leader which he held with Mountaire for several years to a position in the poultry processing plant. This is the same gentleman who was called into the Live Haul Manager's office in January 2007 following the filing of the Complaint. As a result of this meeting with Bruce West, five of the seven Crew Leaders indicated their intent to discontinue as Plaintiffs in this action.

Mr. Sampson and his colleagues, the other six Plaintiffs in this matter, are all exercising their rights under Federal Law and specifically under the Fair Labor Standards Act. The FLSA states unequivocally that retaliation as a result of exercising their statutory rights will not be countenanced.

I understand that Mr. Sampson and his crew were replaced by an "independent crew", many of whom are believed to be illegal aliens. I further understand that a second "independent crew" is scheduled to begin on Monday which will likely mean that another Mountaire Crew Leader will be involuntarily transferred to another part of Mountaire's Millsboro operation.

I am writing to seek a detailed business non-retaliatory explanation for the transfer of Mr. Sampson and perhaps another Crew Leader from their long-held positions as Crew Leaders for Mountaire. In the alternative, I write to demand that Mr. Sampson be immediately reinstated to his Crew Leader position and that a second existing Crew Leader not be involuntarily transferred as happened with Mr. Sampson.

We are fully prepared to contact the Court seeking injunctive relief and/or any other relief that is appropriate under the circumstances.

I look forward to your prompt response.

Very truly yours,

JEFFREY K. MARTIN

JKM/jcf-d

cc:    Eric Hemmendinger, Esquire (via e-mail only eh@shawe.com)
       Roger D. Landon, Esquire (via e-mail only rlandon@msllaw.com)
       Matthew Boyer, Esquire (via e-mail only mboyer@cblh.com)
       Ernest Powell, Sr.
       Gilford Hopkins,
       Kenneth W. Sampson
       Virgil E. Baine
       Vincent Wise, Sr.
       William B. Hudson
       Aubrey Weston

# EXHIBIT "E"



Jeffrey K. Martin, Esquire*

Timothy J. Wilson, Esquire*

*Licensed in DE, PA and NJ

1508 Pennsylvania Avenue
Wilmington, DE 19806
Telephone: (302) 777-4681
Facsimile: (302) 777-5803
www.martinandwilson.com

jmartin@martinandwilson.com

July 11, 2008

**VIA E-MAIL ONLY**
**brewer@shawe.com**

Arthur M. Brewer, Esquire
Shawe & Rosenthal, LLP
Sun Life Building, 11th Floor
20 South Charles Street
Baltimore, MD  21201

RE:    **Weston v. Mountaire Farms**
        **C.A. No.: 07-00052**

Dear Mr. Brewer:

As you know, I e-mailed you a letter this morning with regard apparent retaliatory actions taken by Mountaire against my clients. I have had no response to my letter as yet, but I have just been advised that Aubrey Weston will no longer be serving as a Crew Leader for Mountaire.

I urge you to respond immediately to my letter. In the absence of same, I will contact Judge Robinson in order to put these issues before the Court.

Very truly yours,

JEFFREY K. MARTIN

JKM/jcf-d

cc:    Eric Hemmendinger, Esquire (via e-mail only eh@shawe.com)
       Roger D. Landon, Esquire (via e-mail only rlandon@msllaw.com)
       Matthew Boyer, Esquire (via e-mail only mboyer@cblh.com)
       Ernest Powell, Sr.
       Gilford Hopkins
       Kenneth W. Sampson
       Virgil E. Baine
       Vincent Wise, Sr.
       William B. Hudson
       Aubrey Weston

# EXHIBIT "F"

# SHAWE
# ROSENTHAL LLP

20 S. Charles Street
11th Floor
Baltimore, MD 21201
P: 410-752-1040
F: 410-752-8861

shawe.com

**VIA ELECTRONIC MAIL**

**Eric Hemmendinger**
eh@shawe.com
410-843-3457

July 14, 2008

Jeffrey K. Martin, Esq.
Martin & Wilson, P.A.
1508 Pennsylvania Ave.
Wilmington, DE  19806

Re:     **Aubrey Weston, et al. v. Mountaire Farms, Inc., et al.**
        **Case No. 07-052-SLR**

Dear Mr. Martin:

I have had an opportunity to review your letters of July 11, 2008 with Mountaire.

The trend in the poultry industry is to replace employee chicken catching crews with crews employed by an independent contractor. There are two main reasons for this. First, the independent contractor is more economical. Second, the independent contractor is better able to maintain fully staffed crews. Mountaire had satisfactory results with contracting out in North Carolina and decided to test this way of operating with two crews at Millsboro. The crews selected were those of Kenneth Sampson and Aubrey Weston. The members of the dissolved crews were reassigned to one of the remaining crews. Mr. Weston and Mr. Sampson are being kept on the payroll at the same salary and incentive. They will substitute for crew leaders who are out and will be assigned various projects and office work.

In view of the fact that Mr. Weston and Mr. Sampson continue to be employed at the same level of compensation, I submit that there is no basis for claiming retaliation, much less seeking injunctive relief.

Sincerely,

SHAWE & ROSENTHAL, LLP

/S/

Eric Hemmendinger

# EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, et al.                          )
                                               )
        Plaintiffs,                            )
             v.                                )     C.A. NO. 1:07-cv-00052
                                               )
MOUNTAIRE FARMS, INC., MOUNTAIRE               )     JURY TRIAL DEMANDED
FARMS OF DELAWARE, INC, and                    )
MOUNTAIRE FARMS OF DELAWARE,                    )
all Delaware Corporations                      )
                                               )
        Defendants.                            )

## AFFIDAVIT OF WILLIAM B. HUDSON

STATE OF DELAWARE      :
                       :      SS.
SUSSEX COUNTY          :

        I, WILLIAM B. HUDSON, being duly sworn according to law, depose and state that the

information contained herein is based on my own personal knowledge and is true and correct:

        1.      I am Plaintiff in the above-captioned matter and I am currently employed as a

Crew Leader for Mountaire.

        2.      I testified by deposition on June 17, 2008 regarding my job responsibilities as a

Crew Leader.

        3.      In my testimony, I advised that I was aware of several crew members who were

terminated by Mountaire apparently because of their illegal immigration status.

        4.      Over the last week, I have worked with independent crews that have recently been

hired to replace the crews of Crew Leaders Sampson and Weston. I have noted that several of

the crew members consist of chicken catchers who were previously terminated by Mountaire

because of their immigration status.

_____
WILLIAM B. HUDSON

SWORN AND SUBSCRIBED before me this _____ day of July, 2008.

_____
NOTARY PUBLIC

# EXHIBIT "H"

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, et al.                    :
                                         :
              Plaintiff,                 :
                                         :
      v.                                 :        Civil Action No. 1:07-cv-00052
                                         :
MOUNTAIRE FARMS, INC.,                   :
                                         :
              Defendants.                :

## <u>AFFIDAVIT OF JEFFREY K. MARTIN, ESQUIRE</u>

STATE OF DELAWARE    :
                     :        SS.
NEW CASTLE COUNTY    :

I, JEFFREY K. MARTIN, ESQUIRE, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.      I am counsel to Plaintiffs in the above-captioned matter.

2.      I was contacted by Plaintiff William B. Hudson on July 15, 2008, and was advised that the independent crews that are replacing Messrs. Sampson and Weston and their crews contain illegal immigrants that were once recognized illegal by Mountaire and were terminated.

3.      I drafted an Affidavit for Mr. Hudson's signature and reviewed the terms of the Affidavit with him before presenting the Affidavit to him.

4.      We were unable to meet in Millsboro on July 15, 2008, as scheduled before Mr. Hudson went to work because his telephone was not working properly.

5.      I learned that he was working at the Butch & Nettie farm in Frankford and went there at approximately 1:45 p.m. on July 15, 2008. Upon my arrival at the farm complex, I saw

Mr. Hudson standing by a chicken house.

6.    Upon parking in the parking lot adjacent to the street, I was promptly greeted by Bruce West, the Live Haul Manager, who advised me that I was not permitted on the property. I acknowledged same and advised him that I would stand by my car. I told him that I wanted to see "Buck" Hudson for approximately two minutes. He said that he would go and try to find him.

7.    Approximately fifteen minutes later, Mr. West approached the affiant who was standing by his car and Mr. West said "sorry Mr. Martin, he is on my time." This was an apparent reference that Buck Hudson was working at the time.

8.    I promptly left the farm complex in my automobile and made arrangements with Hudson's wife as to where I left the Affidavit for Mr. Hudson's pick up and signature before a Notary Public.


_____
JEFFREY K. MARTIN, ESQUIRE

SWORN AND SUBSCRIBED before me this _16th_ day of July, 2008.


_____
NOTARY PUBLIC


JILLYNN C. DELLOSO
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Oct. 26, 2010

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served this 16th day of July,

2008, on the below individuals via electronic mail.


Roger D. Landon, Esquire
Murphy Spadaro & Landon, P.A.
1011 Centre Road, #210
Wilmington, DE 19805
rlandon@msllaw.com

Arthur M. Brewer, Esquire
Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
20 S. Charles St., 11th Floor
Baltimore, MD 21201
brewer@shawe.com
eh@shawe.com


JEFFREY K. MARTIN, ESQUIRE