**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AUBREY WESTON, *et al.*,                 *
                                                           *
                         Plaintiff,            *        Civil Action No. 07-052-SLR
            v.                                        *
                                                           *
MOUNTAIRE FARMS, INC., *et al.*  *
                                                           *
                     Defendants.           *
_____/

**OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER,
AND/OR PRELIMINARY INJUNCTION AGAINST MOUNTAIRE AND ITS
CORPORATE OFFICERS VINK AND WEST IN RESPONSE TO
RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**

Defendants respectfully submit that Plaintiffs' claim of irreparable injury is so

weak that their motion for a TRO or preliminary injunction should be summarily denied,

without the necessity of a hearing.  It is undisputed that when Mountaire replaced some

of its chicken catcher crews with independent contractors, it transferred the affected Crew

Leaders to other positions, at the same salary and incentive.  It is well established that

even a termination of employment does not ordinarily constitute irreparable injury.

*Sampson v. Murray*, 415 U.S. 61, 91-92 (1974).  In view of the Supreme Court's holding

concerning terminations, the Third Circuit held that it is "obvious" that a lateral transfer

does not warrant an injunction.  *Moteles v. University of Pennsylvania*, 730 F.2d 913, 919

(3d Cir. 1984).  There is no exception to these rules for retaliation claims.  *Marxe v. C.W.

Jackson*, 833 F.2d 1121 (3d Cir. 1987).[1]

_____

[1] This Opposition is filed on behalf of Mountaire.  Vink and West have not been served
with process and are not parties to this case.

## STATEMENT OF FACTS

The following facts are supported by the attached affidavit of Mark Chranoswski. Def. Ex. 1 (hereinafter "MC Aff.").

In April 2007 Mark Chranowski was hired as Director of Processing Operations for Mountaire Farms of Delaware, Inc.  Chranowski is responsible for reviewing and managing operations at Mountaire's Millsboro, Delaware facility in order to reduce costs and improve production.  MC Aff. ¶¶ 1, 2.

Starting in 2007, Chranowski started to investigate the possibility of using an independent contractor to replace employee chicken catcher crews at the Millsboro plant. The use of independent contractors is a trend in the poultry industry.  In fact, most of the big processors now use independent contractor catching crews.  MC Aff. ¶ 3.

In April 2008, Mountaire replaced some of its own chicken catching crews with an independent contractor at its facility in Lumber Bridge, North Carolina, with satisfactory results.  The independent contractor was able to maintain fully staffed crews, thereby increasing production.  MC Aff. ¶ 4.

Starting in Fall 2007, Mountaire experienced unprecedented increases in fuel and feed costs which generated pressure to cut costs.  In Spring 2008, Mountaire also faced a dramatic reduction in the size of labor pool for both plant and catcher positions.  It has become extremely difficult to hire and retain employees.  MC Aff. ¶ 5.

The Millsboro plant had seven chicken catching crews, of which Plaintiffs were the Crew Leaders.  Since the beginning of Spring 2008, there have been difficulties in fully staffing the chicken catching crews because of the shrinking labor pool.  MC Aff. ¶ 6.

In June 2008, Mountaire decided to use an independent contractor to replace some of the employee chicken catching crews at Millboro.  Chranowski based this decision on a number of factors, including his prior experience at another company, his calculations of the projected cost savings from using independent crews, the contractor's commitment to supply labor that the Company was unable to obtain on its own, and trends in the industry.  MC Aff. ¶ 7.

Chranowski concluded that the cost of using an independent contractor was significantly lower than the cost of employing catching crews.  The cost differential is approximately three percent per 1,000 birds, which in the chicken processing industry is considered a huge savings.  MC Aff. ¶ 8.

Mountaire decided use the independent contractor to replace three of the seven Millsboro crews.  Based on the number of chicken catchers that it currently employs, Mountaire determined that it would, if possible, continue to staff four of its own employee crews.  MC Aff. ¶ 9.

On June 6, 2008, the Mountaire signed a contract with Unicon, Inc. to provide catching services at its Millsboro plant.  Unicon is the same independent contractor Mountaire uses in its North Carolina plant.  MC Aff. ¶ 10.

On June 28, 2008, Mountaire replaced Plaintiff Kenneth Sampson's crew with an independent crew from Unicon.  Plaintiff Sampson was retained on the payroll at the same salary and incentive plan.  His crew was reassigned among the remaining crews.  MC Aff. ¶ 11.

On July 14, 2008, Mountaire replaced Plaintiff Aubrey Weston's crew with an independent crew from Unicon.  Plaintiff Weston was retained on the payroll at the same

salary and incentive plan. His crew was reassigned among the remaining crews. MC Aff. ¶ 12.

In their interim positions, Plaintiffs Sampson and Weston are to substitute for Crew Leaders who are absent, and are being assigned projects and office work. MC Aff. ¶ 13.

Mountaire intends to replace Plaintiff William Hudson's crew with an independent crew from Unicon on or about July 28, 2008. Mountaire intends to transfer Plaintiff Hudson to an interim position like Plaintiffs Sampson and Weston, at his same level of salary and incentive plan. MC Aff. ¶ 14.

If Mountaire transfers Plaintiffs Weston and Sampson back to Crew Leader positions, it would have to break its contract with the independent contractor. Pursuant to the contract, Mountaire must give 90 days of notice to terminate. MC Aff. ¶ 15.

In addition, Mountaire would be required to reassign crew members to recreate the two additional crews, which would result in the other crews being understaffed again. As mentioned above, Mountaire cannot hire sufficient employees to staff the number of crews it needs. MC Aff. ¶ 16.

With understaffed crews, Mountaire suffers from lower productivity and increased costs in the form of longer hours to catch the required number of chickens, overtime pay for non-exempt chicken catchers, and increased risk of injury to employees. MC Aff. ¶ 17.

The contract with the independent contractor requires the contractor to "participate in the USCIS [United States Citizenship and Immigration Services]

electronic employment eligibility verification system currently known as E-Verify." MC Aff. ¶ 18.

The decision to replace certain crews was based on a variety of considerations including the staffing of the crew, how redistribution would benefit other crews, and the leaders' performance. Participation in the lawsuit was not a consideration. In fact, there is no one Mountaire could have chosen who is not participating in the lawsuit, since all seven Crew Leaders in Millsboro are named Plaintiffs in the lawsuit. MC Aff. ¶ 19.

As mentioned above, Mountaire replaced some of the chicken catching crews at its Lumber Bridge, North Carolina plant with the same independent contractor in April 2008. There has not been a lawsuit involving the Crew Leaders in North Carolina. MC Aff. ¶ 20.

## ARGUMENT

Claims of retaliation are subject to the same standards for issuance of a temporary or preliminary injunction as other claims. *Marxe v. C.W. Jackson*, 833 F.2d 1121 (3d Cir. 1987) (claim of retaliation under Title VII). The general rules are that "the grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (*citing Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). In determining whether to grant a request for temporary restraining order or preliminary injunction, a court should consider whether: (1) the movant has shown that there is a reasonable likelihood that it will succeed on the merits; (2) the movant has demonstrated that it will suffer irreparable harm absent the relief sought; (3) other parties will be substantially injured by the relief; and (4) where the public interest lies. *Tootsie*

*Roll Indus., Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D. Del. 1987) (*citing Premier Dental Products v. Darby Dental Supply Co.*, 794 F.2d 850, 852 (3d Cir. 1986) *cert. denied*, 479 U.S. 950 (1986). As the Third Circuit has held, "All four factors should favor preliminary relief before the injunction will issue." *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

In this matter, Plaintiffs are unable to demonstrate that they will suffer irreparable harm or that they have a likelihood of success on the merits. Moreover, Defendants will suffer substantial injury if the requested injunctive relief is granted.

## A.    Plaintiffs Cannot Demonstrate Irreparable Harm

In order to prove irreparable harm, the moving party must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (*quoting Instant Air Freight Co.*, 882 F.2d at 801. "Economic loss does not constitute irreparable harm." *Acierno*, 40 F.3d at 653. "[T]he injury created by a failure to issue the requested injunction must be of a peculiar nature, so that compensation in money cannot atone for it. The word irreparable connotes that which cannot be repaired, retrieved, put down again [or] atoned for." *Id.* (internal quotations and citations omitted).

The Supreme Court has held that as a general rule, even a complete termination f employment does not constitute an irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (termination "falls far short of the type of injury which is a necessary predicate to the issuance of a temporary injunction.") Accord, *Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987) (loss of income due to termination not irreparable harm). In this case, Weston and Sampson have not been terminated. To the contrary, both of them were

transferred to other positions within the Company, receiving the same salary and incentive as before. *Moteles v. University of Pennsylvania*, 730 F.2d 913, 919 (3d Cir. 1984) ("If a discharge from employment with all its attendance difficulties is not irreparable injury, it is obvious that the involuntary transfer to another shift is nothing more than inconvenience—not enough to warrant the issuance of a preliminary injunction"); (*Morales-Narvaez v. Rossello,* 852 F. Supp. 104, 115 (D.P.R. 1994) (no irreparable injury where "plaintiffs have not been fired, but transferred to positions that are not unreasonably inferior to their former jobs"), *aff'd* 65 F.3d 160 (1st Cir. 1995).

Plaintiffs Weston and Sampson assert harm in the form of lost overtime opportunities. The *status quo* is that as Crew Leaders, the Weston and Sampson were classified as salaried exempt and did not receive overtime. They claim that this classification was incorrect and that they are entitled to overtime. Their claim to future overtime, like their claim to past overtime, can be remedied with money damages, in the event they prevail on both claims. They are not suffering an immediate loss as a result of not working overtime.

At this time, the Company plans to replace only one additional crew – that of Plaintiff Hudson. Like Plaintiffs Weston and Sampson, Plaintiff Hudson is to receive the same salary and incentive as he received as a Crew Leader.

**B.    There Is No Likelihood of Success on the Merits**

Contrary to Plaintiffs' argument, there is nothing suspicious about the nature or timing of the contracting out decision. The contract with Unicon was signed June 6, 2008. This case was filed January 26, 2007, approximately 18 months earlier. This timing is not suggestive of retaliation. *LeBoon v. Lancaster Jewish Comm. Ctr. Assn.,*

503 F.3d 217, 233 (3d Cir. 2007) (three months between protected activity and adverse action is not unusually suggestive of retaliation). The depositions that Plaintiffs describe in their Statement of Fact (¶ 7) were held June 17, 18, and 27, after the contract was signed.

In any event, Mountaire has a legitimate, non-retaliatory reason for replacing its Crew Leaders with independent contractors. Agricultural businesses are experiencing unprecedented increases in feed and fuel costs, which create great pressure to find cost savings. Mountaire calculated that using the contractor would save three percent per 1,000 birds, a significant savings in the poultry industry.

In addition, Mountaire has also experienced a dramatic contraction in the labor pool available to fill both plant and chicken catcher jobs. It has enough employees to fill four employee crews in the foreseeable future. The independent contractor has contracted to supply three additional crews. The same contractor has done so with success at Mountaire's North Carolina plant. The Crew Leaders there have not brought a lawsuit against the Company.

Also contrary to Plaintiffs' argument, Mountaire's selection of Weston, Sampson and Hudson's crews for replacement does not suggest an improper motive. Two of them (Weston and Sampson) at one time sought to withdraw from the lawsuit (Plaintiff's Exhibit B) while one of them (Hudson) did not. Ultimately, all of the Crew Leaders remained in the lawsuit. When the contracting out decision was made, there was no Crew Leader that the Company could have chosen for replacement who was not a party to the lawsuit.

### C.     Defendants Will Suffer Substantial Injury If the Requested Relief Is Granted

To reinstate Weston, Sampson and Hudson as Crew Leaders, the Company would have to cancel its contract with Unicon, which requires 90 day notice to terminate. Then, it would have to reassemble the three disbanded crews, so that Weston, Sampon and Hudson could supervise them. This would leave the chicken-catching operation severely understaffed, because the Company currently has sufficient employees to staff four out of seven crews. The Company could attempt to catch more birds with the same number of catchers, but this would increase the risk of injury to employees as well as the Company's labor costs. Without the required number of catchers, the Company would be required to cut back production, resulting in layoffs for production employees and loss of revenue. The Company does not have the ability to hire more catchers at an economical rate of pay—that is why it decided to contract out in the first place.

### D.     The public interest does not favor issuance of injunction.

Plaintiffs content that granting an injunction will ensure that the chicken-catching work will be performed by employees with valid immigration status. Mountaire's contract with Unicon requires it to use the E-Verify system to assure that its employees are legal. No public interest would be served by issuing an injunction that is not necessary to protect the employees in question against economic losses. No public interest would be served by requiring Mountaire to continue a method of operating which is not sustainable in the current business climate.

## CONCLUSION

Plaintiffs' request for a temporary restraining order or preliminary injunction should be denied because they do not meet the requirements for such extraordinary relief.

Plaintiffs cannot demonstrate that they will suffer irreparable harm or that they are likely to succeed on the merits of a retaliation claim. Moreover, Defendants would be substantially injured by the requested relief.

_____
Roger D. Landon (Del. Bar. No. 2460)
Murphy & Landon
1011 Centre Road, #210
Wilmington, Delaware 19805
(302) 472-8100

Arthur M. Brewer
Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
20 S. Charles St., 11th Floor
Baltimore, MD 21201
Telephone: (410) 752-1040
Facsimile: (410) 752-8861

*Attorneys for Defendants*

Dated: July 25, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AUBREY WESTON, *et al.,*          *
                                  *
            Plaintiff,            *      Civil Action No. 07-052-SLR
       v.                         *
                                  *
MOUNTAIRE FARMS, INC., *et al.*   *
                                  *
            Defendants.           *
_____/

## ORDER

IT IS HEREBY ORDERED, this _____ day of _____, 2008, that

Plaintiffs' Motion for Temporary Restraining Order, And/or Preliminary Injunction

Against Mountaire and Its Corporate Officers Vink And West In Response to Retaliation

Under the Fair Labor Standards Act is DENIED.


_____
United States District Judge


11

## CERTIFICATE OF SERVICE

I hereby certify that a copies of the foregoing Opposition to Motion for

Temporary Restraining Order, And/or Preliminary Injunction Against Mountaire and Its

Corporate Officers Vink And West In Response to Retaliation Under the Fair Labor

Standards Act was served this 25th day of July, 2008, by First Class mail, postage

prepaid, upon:

> Jeffrey K. Martin, Esq.
> Martin & Wilson, P.A.
> 1508 Pennsylvania Ave.
> Wilmington, DE  19806

_____
Roger D. Landon

#182686

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AUBREY WESTON, *et al.*,          *
                                  *
          Plaintiff,              *          Civil Action No. 07-052-SLR
     v.                           *
                                  *
MOUNTAIRE FARMS, INC., *et al.*   *
                                  *
          Defendants.             *
_____/

**AFFIDAVIT OF MARK CHRANOWSKI**

1.    My name is Mark Chranowski. I am the Director of Processing

Operations for Mountaire Farms of Delaware, Inc. I have held that position since April

2007. Prior to that, I worked for other poultry processors. I am competent to testify and

have personal knowledge of the facts set forth herein.

2.    I am responsible for reviewing and managing operations at Mountaire's

Millsboro, Delaware facility in order to reduce costs and improve production.

3.    Starting in 2007, I started to investigate the possibility of using an

independent contractor to replace employee chicken catcher crews at the Millsboro plant.

The use of independent contractors is a trend in the poultry industry. In fact, most of the

big processors now use independent contractor catching crews.

4.    In April 2008, Mountaire replaced some of its own chicken catching crews

with an independent contractor at its facility in Lumber Bridge, North Carolina, with

satisfactory results. The independent contractor was able to maintain fully staffed crews,

thereby increasing production.

5.    Starting in Fall 2007, Mountaire experienced unprecedented increases in

fuel and feed costs which generated pressure to cut costs. In Spring 2008, Mountaire also

1

faced a dramatic reduction in the size of the labor pool for both plant and catcher positions. It has become extremely difficult to hire and retain employees.

6.      The Millsboro plant had seven chicken catching crews, of which Plaintiffs were the Crew Leaders. Since the beginning of Spring 2008, there have been difficulties in fully staffing the chicken catching crews because of the shrinking labor pool.

7.      In June 2008, Mountaire decided to use an independent contractor to replace some of the employee chicken catching crews at Millboro. I based this decision on a number of factors, including my prior experience at another company, my calculations of the projected cost savings from using independent crews, the contractor's commitment to supply labor that we were unable to obtain on our own, and trends in the industry.

8.      I concluded that the cost of using an independent contractor was significantly lower than the cost of employing catching crews. The cost differential is approximately three percent per 1,000 birds, which in the chicken processing industry is considered a huge savings.

9.      Mountaire decided use the independent contractor to replace three of the seven Millsboro crews. Based on the number of chicken catchers that it currently employs, Mountaire determined that it would, if possible, continue to staff four of its own employee crews.

10.     On June 6, 2008, the Mountaire signed a contract with Unicon, Inc. to provide catching services at its Millsboro plant. Unicon is the same independent contractor Mountaire uses at its North Carolina plant.

11.    On June 28, 2008, Mountaire replaced Plaintiff Kenneth Sampson's crew with an independent crew from Unicon. Plaintiff Sampson was retained on the payroll at the same salary and incentive plan. His crew was reassigned among the remaining crews.

12.    On July 14, 2008, Mountaire replaced Plaintiff Aubrey Weston's crew with an independent crew from Unicon. Plaintiff Weston was retained on the payroll at the same salary and incentive plan. His crew was reassigned among the remaining crews.

13.    In their interim positions, Plaintiffs Sampson and Weston are to substitute for Crew Leaders who are absent, and are being assigned projects and office work.

14.    Mountaire intends to replace Plaintiff William Hudson's crew with an independent crew from Unicon on or about July 28, 2008. Mountaire intends to transfer Plaintiff Hudson to an interim position like Plaintiffs Sampson and Weston, at his same level of salary and incentive plan.

15.    If Mountaire transfers Plaintiffs Weston and Sampson back to Crew Leader positions, it would have to break its contract with the independent contractor. Pursuant to the contract, Mountaire must give 90 days of notice to terminate.

16.    In addition, Mountaire would be required to reassign crew members to recreate the two additional crews, which would result in the other crews being understaffed again. As mentioned above, we cannot hire sufficient employees to staff the number of crews we need.

17.    With understaffed crews, Mountaire suffers from lower productivity and increased costs in the form of longer hours to catch the required number of chickens, overtime pay for non-exempt chicken catchers, and increased risk of injury to employees.

18.    The contract with the independent contractor requires the contractor to "participate in the USCIS [United States Citizenship and Immigration Services] electronic employment eligibility verification system currently known as E-Verify."

19.    The decision to replace certain crews was based on a variety of considerations including the staffing of the crew, how redistribution would benefit other crews, and the leaders' performance. Participation in the lawsuit was not a consideration. In fact, there is no one we could have chosen who is not participating in the lawsuit, since all seven Crew Leaders in Millsboro are named Plaintiffs in the lawsuit.

20.    As mentioned above, Mountaire replaced some of the chicken catching crews at its Lumber Bridge, North Carolina plant with the same independent contractor in April 2008. There has not been a lawsuit involving the Crew Leaders in North Carolina.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed by me this _25_ day of July, 2008.

4